UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL COOPER,

       Petitioner,         Civil Action No. 14-CV-13108

vs.              HON. BERNARD A. FRIEDMAN

DUNCAN MACLAREN,

       Respondent.
_____/

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

### I. Introduction

    This is a habeas case brought pursuant to 28 U.S.C. § 2254. Following a jury trial in Wayne County Circuit Court, petitioner was convicted of first-degree murder, MICH. COMP. LAWS § 750.316, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. In 2010, he was sentenced to life imprisonment without the possibility of parole, a concurrent term of six months to five years imprisonment, and a consecutive terms of two years imprisonment. Petitioner raises claims concerning the great weight of the evidence, the sufficiency of the evidence, the effectiveness of trial and appellate counsel, the conduct of the prosecutor, the jury instructions, and the legality of a search and seizure of evidence. For the reasons stated below, the Court shall deny the petition, decline to issue a certificate of appealability, and dent petitioner leave to proceed on appeal *in forma pauperis*.

## II.    Facts and Procedural History

Petitioner's convictions arise from his shooting of a man, Ronald Beard, who was involved with his girlfriend, Chalaunda Latham. The shooting occurred on a street in Wayne County, Michigan on May 2, 2010. Defense counsel on direct appeal summarized the trial testimony as follows:

> Late in the evening on Saturday, May 1, 2010, the Defendant, Darryl Copper, went to the Binford Lounge with Chalaunda Latham and Tenia Brim. (T1 at 190). Mr. Cooper, Ms. Latham and Ms. Brim walked to Binford Lounge because it was "only a mile or two" from the neighborhood where they lived. (T1 at 190). Ronald Beard was at the Binford Lounge when Mr. Cooper, Ms. Latham and Ms. Brim arrived. (T1 at 191, 251-252). Mr. Cooper was the boyfriend of Ms. Latham. (T1 at 248). Mr. Cooper and Ms. Latham were in a relationship that had been going on for six years. (T1 at 200, 249). Mr. Beard and Ms. Latham had been friends for thirteen or fourteen years, and also had an ongoing romantic relationship. (T1 at 199, 249). Mr. Cooper and Mr. Beard were aware that Ms. Latham was seeing both of them. (T1 at 237, 249). Ms. Latham had attended a movie with Mr. Beard the day before. (T1 at 251).
>
> Mr. Cooper, Ms. Latham and Ms. Brim stayed at the Binford Lounge for about an hour. (T1 at 216). As Mr. Cooper, Ms. Latham and Ms. Brim were leaving the Binford Lounge, Mr. Beard threw water on Ms. Latham. (T1 at 191, 253). Ms. Latham "laughed it off." (T1 at 191, 253.)
>
> Mr. Beard followed Mr. Cooper, Ms. Latham and Ms. Brim as they left the Binford Lounge and headed towards Mr. Cooper's house. (T1 at 192, 199, 217). Mr. Beard initially followed in his car, but later got out of his car, and followed on foot as Mr. Cooper, Ms. Latham and Ms. Brim crossed through fields. (T1 at 193, 257). Mr. Beard was calling to Ms. Latham, and yelling at her to come back. (T1 at 192-193, 217, 258).
>
> Mr. Cooper and Ms. Latham, with Mr. Beard following, crossed into a second field, while Ms. Brim stayed on the sidewalk and did not go into the second field with them. (T1 194-195). Ms. Brim watched Mr. Cooper, Ms. Latham and Mr. Beard in the field, and testified that she could overhear what they were saying. (T1 at 194-197). It appeared

to Ms. Brim that Mr. Cooper and Mr. Beard were "about to have a confrontation," but "they never had words with each other" and she saw no physical contact between the two men. (T1 at 194, 197, 235). Ms. Latham testified that Mr. Cooper complained that he had never been disrespected like that before, and Ms. Brim heard him say this as well. (T1 at 259; T1 at 195).

Ms. Latham stood between Mr. Cooper and Mr. Beard, trying to prevent them from having a confrontation. (T1 at 195, 197). Mr. Beard was heavier and taller than Mr. Cooper. (T1 at 254, 264). Both Mr. Cooper and Mr. Beard were telling Ms. Latham to "come here," and "calling her back and forth." (T1 at 196).

Mr. Beard slapped or hit Ms. Latham. (T1 at 196, 220, 222, 224, 263). Ms. Latham testified that he pushed or slapped her hard enough to make her fall down. (T1 at 263, 264). Ms. Brim testified that she saw Mr. Beard slap Ms. Latham so hard that she "spinned." (T1 at 223).

Ms. Latham denied being angry about this, though he had never hit her before, but she wanted to get away from him or avoid him by walking away. (T1, 292-293, 295). Mr. Beard was jealous and acting out of character. (T1, 296; T2, 19).

Ms. Latham testified that Mr. Cooper also slapped her. (T1 at 263-264). Ms. Brim testified that she saw Mr. Cooper push and shove Ms. Latham. (T1 at 196). After Mr. Cooper slapped (or pushed) Ms. Latham, she saw a "little pocket knife" in his hand, "like the kind you get from the gas station." (T1 at 264).

The encounter in the field between Mr. Cooper, Mr. Beard and Ms. Latham ended when Mr. Cooper ran off in the direction of his house on Bassett Street. (T1 at 198, 222, 265). Mr. Beard got in his car and drove away. (T1 at 198). Ms. Brim caught up with Ms. Latham, and they walked as Ms. Brim called another friend, Shaunte Johnson. (T1 at 198).

Ms. Johnson picked up Ms. Brim and Ms. Latham in her car. (T1 at 199, 266; T2 at 25). Ms. Brim got into the passenger seat, and Ms. Latham sat in the back. (T1 at 199, 266; T2 at 26). Ms. Latham used Ms. Brim's cell phone to call Mr. Cooper several times, but he did not answer. (T1 at 200, 201, 267). After fifteen or twenty minutes of driving around, Ms. Latham asked Ms. Johnson to drive to Mr. Cooper house so they could check on him. (T1 at 225-226; T1 at 201,

266; T2 at 27). Ms. Latham denied using the time to find a weapon to protect herself. (T2, 9).

At Mr. Cooper's house, the lights were off, and the three women did not get out of the car. (T1 at 226; T2 at 27-28). Ms. Latham continued using Ms. Brim's cell phone to try to call Mr. Cooper, but he was not answering. (T1 at 269; T2 at 28). As the three women started to drive away from Mr. Cooper's house, Ms. Latham noticed Mr. Beard pull up and park his car two houses down and across the street from Mr. Cooper's house. (T1 at 201-202, 229, 269-270). Ms. Johnson pulled the car up beside Mr. Beard's car, with the back window beside Mr. Beard's driver seat window, so Ms. Latham could speak to Mr. Beard. (T1 at 202; T1 at 227; T2 at 30). Ms. Latham and Mr. Beard had a conversation, and according to Ms. Brim, they both were acting normal. (T1 at 203). However, Ms. Latham testified that Mr. Beard was still not speaking nicely to her. (T1 at 271).

As Ms. Latham and Mr. Beard were talking, Ms. Latham and Ms. Brim both saw Mr. Cooper "running up the street." (T1 at 203-204; 272) Ms. Brim did not see anything in Mr. Cooper's hand. (T1 at 204). Ms. Latham saw him running and carrying a long gun. (T1 at 272). Ms. Johnson saw him carrying a big shotgun, and said out loud, "He has a big-ass gun!" (T1 at 204, 274; T2 at 31).

Ms. Latham testified that Mr. Cooper had the gun pointing down. (T1 at 273). Ms. Johnson testified that she saw Mr. Cooper level the gun and aim it at Mr. Beard's car before she pulled the car away. (T1 at 32, 35). The gun went in the car on the driver's side window. (T2, 68).

Ms. Latham and Ms. Brim ducked down, and Ms. Johnson drove the car away. (T1 at 205). Ms. Latham, Ms. Brim and Ms. Johnson heard gunshots as they were pulling away. (T1 at 205, 275). Ms. Brim testified that she heard two gunshots. (T1 at 205). Ms. Latham and Ms. Johnson testified that they heard three gunshots. (T1 at 275; T2 at 33). Ms. Latham, Ms. Brim and Ms. Johnson did not see a weapon fired. (T1 at 236-237; T2 at 33, 35).

After hearing the gunshots, Ms. Johnson, Ms. Latham and Ms. Brim drove to Ms. Johnson's house because they were scared. (T1 at 207; T2 at 36). Ms. Latham used Ms. Brim's cell phone first to try to call Mr. Beard, then to call Mr. Cooper. (T1 at 278) Mr. Cooper answered. (T1 at 279). Mr. Cooper told her where he was, asked where she was and told her to get dropped off at his house. (T1 at

280). Ms. Latham lied to Mr. Cooper about her location, and did not get dropped off at his house. (T1 at 280).

Ms. Latham, Ms. Johnson and Ms. Brim did not call the police. (T1 at 284). Ms. Brim testified that in their neighborhood, "you don't voluntarily go to the police telling them that you saw a murder," and that "people firebomb other people's houses and stuff" for calling the police. (T1 at 208). They did not go into Ms. Johnson's house, and after five minutes sitting in the car in front of Ms. Johnson's house, they returned to Mr. Cooper's house. (T1 at 207-208).

Mr. Brim testified that the first time they drove past Mr. Cooper's house, they saw Mr. Beard's car still parked across the street with the headlights on. (T1 at 208, 231, 281). The second time they circled the block, the police were there. (T1 at 209). Ms. Johnson, Ms. Brim and Ms. Latham all got out of Ms. Johnson's car. (T1 at 209-210). Ms. Brim testified she was crying and upset. (T1 at 209). They did not speak to the police who were present. (T1 at 209).

Ms. Latham testified that when they returned to Mr. Cooper's house, Ms. Johnson parked the car down the street, and that Ms. Johnson got out of the car to go back to Mr. Beard's car to see what had happened. (T1 at 283). According to Ms. Latham, Ms. Johnson then returned to her car, and told Ms. Latham and Ms. Brim that "Ron ain't moving." (T1 at 283).

Ms. Johnson testified that when they returned to Mr. Cooper's house, the police were already there. (T1 at 36). The three women were in a "frenzy" wondering what had happened. (T1 at 37). Ms. Johnson volunteered to get out of the car and check what had happened. (T1 at 37). Ms. Johnson did not speak to the police who were there because that is not something that people in her neighborhood do and she was concerned the police would not believe her anyway. (T1 at 37-38).

Ms. Johnson, Ms. Brim and Ms. Latham all testified that, after realizing that Mr. Beard was dead, they walked down the street together until they saw the boyfriend of Ms. Brim's sister driving down the street, and he took the three of them home. (T1 at 210, 283-284; T2 at 38).

Ms. Johnson, Ms. Brim and Ms. Latham did not attempt to contact the police until the following Tuesday. (T1 at 210; T2 at 39). They went together to two police stations in their area, but did not make

statements at that time. (T1 at 210-215, 235, 286). Ms. Brim testified that eventually they made statements to the police when the police came and got them when they were together at a McDonald's. (T1 at 215, 236). Ms. Latham testified that she made a statement after contacting a detective. (T1 at 288). Ms. Latham denied that she, Ms. Brim or Ms. Johnson had a gun. (T1, 289).

A 911-tape was played for the jury over defense objection, identifying the shooter as a man. (T2, 7, 70-74, T3 at 46; see also T3, 11).

Officer Adrian Flowers-Yancey, who went to the location of the shooting after hearing about it on her patrol car radio, testified that she saw a man slumped over in the driver's seat of his car (T2 at 76-77). She saw gunshot wounds under the man's arm, on the left side of his body, which was facing the driver side window. (T2 at 77-78). Officer Flowers-Yancey "canvassed the area" to try to get statements about the shooting. (T2 at 78). Only one person would talk to Officer Flowers-Yancey. The person described the suspect as a "tall, black male carrying a long gun." (T2 at 79). Officer Flowers-Yancey looked for evidence at the location of the shooting, specifically shell casings or weapons, but none were found. (T2 at 81).

Officer Raymond Diaz, an evidence technician, testified that he went to the location of the shooting on the night it happened. Officer Diaz prepared two sketches of the scene of the shooting, and one of the two was admitted into evidence at trial. (T2 at 113-114). Officer Diaz looked for evidence, such as firearms, gun casings or bullets, but did not find any. (T2 at 115-116). He testified that the lighting in the area of the shooting was "at times poor" because the streetlight would intermittently turn off, and then back on again. (T2 at117).

Officer Lori Briggs, also an evidence technician, testified that she went to Mr. Cooper's home on May 6, 2010 after other officers had gone there with a search warrant. (T2 at 95). Officer Briggs found and took various rifles, shotguns, and ammunition. (T2 at 96-97). She identified each of these weapons and ammunition at trial, and they were admitted into evidence. (T2 at 98-110).

It was stipulated to that a bullet jacket and a portion of a bullet jacket were removed from the body of Mr. Beard. (T2 at 161)

Sergeant Robert Rayer, a specialist in the Firearms Identification

Unit, testified that none of the weapons taken from Mr. Cooper's home could have fired the bullet jacket found in Mr. Beard. (T2 at 160). He determined the bullet jacket had been a bullet within the 7.62mm caliber class. (T2 at 158). The bullet jacket was likely fired by an AK-47 or SKS rifle because those are the most common weapons that use 7.62mm ammunition. (T2 at 158).

Officer Kevin Johnson testified he went to Detroit Receiving Hospital on the night the shooting happened, and received Mr. Beard's clothing from the hospital. (T2 at 88-89). The items of clothing that Officer Johnson received were a black t-shirt, a thermal t-shirt, a belt, a pair of pants and one black tennis shoe. (T2 at 91). Officer Johnson also received from the hospital a small bag containing a substance suspected to be cocaine. (T2 at 91-93).

Dr. Boguslaw Pietak, a forensic pathologist, testified that he performed an autopsy on Mr. Beard. (T2 at 163; 166). He determined the cause of Mr. Beard's death was multiple gunshot wounds and the manner of death was homicide. (T2 at 166-167). The three gunshot wounds were to the left side of his chest. (T2 at 167). Dr. Pietak did not see any evidence of close-range firing. (T2 at 171). However, he also testified that there are circumstances where close-range firing can occur, but there would not be any evidence of it on the victim's body. (T2 at 171). This could happen if the victim was wearing layers of clothing, like the t-shirt and thermal shirt that Mr. Beard was wearing. (T2 at 172-173). Mr. Beard's toxicology report reflected positive results for alcohol and ecstasy. (T2 at 176).

Sergeant Amanda Crooker, a specialist in the Forensic Science Division, testified that there was only one hand print on the weapons from Mr. Cooper's home that could be used for identification purposes. (T2 at 136-138; 140). That hand print on the gun did not match samples she had of Mr. Cooper's hand print or Mr. Beard's hand print. (T2 at 137). Officer Crooker did not have samples of the handprints of Ms. Latham, Ms. Brim and Ms. Johnson, and was not asked to determine if the handprint on the gun from Mr. Cooper's home could have belonged to any of the three women. (T2 at 141).

Corporal Ki Sobol, an investigator for the Wayne County Sheriff's Department, testified that he monitored Mr. Cooper's phone calls from jail that Mr. Cooper made on May 20, 2010 and May 26, 2010. (T2 at 119-121). Both calls lasted fifteen minutes each, and both calls were to a phone number assigned to Tawana McGee. (T2 at 121-122). Recordings of the two phone calls were admitted into

evidence and played for the jury. (T2 at 122-124; 126). Mr. Cooper described Ms. Latham as the "fuel for the fire" on the night of the incident. (*See e.g.* T3, 13-149). Andrea Dudley testified that she is Mr. Beard's sister, and that she knew Mr. Cooper well because their mothers were close friends. (T2 at 187).

It was stipulated that Mr. Cooper was previously convicted of a felony, and that his right to possess a firearm were not restored. (T2, 188).

Def.'s App. Br., pp. 3-12 (footnotes omitted).

Petitioner did not testify at trial, but his defense was that the evidence failed to show that Ronald Beard was shot by any of the rifles known to be owned by the petitioner and that the three eyewitnesses, Chalaunda Latham, Tenia Brim, and Shaunte Johnson, were not credible.

As noted, the jury convicted petitioner of first-degree murder, felon in possession, and felony firearm. The trial court sentenced him to life imprisonment without parole, a concurrent term of one and a half to five years imprisonment, and a consecutive term of two years imprisonment.

Petitioner filed an appeal of right with the Michigan Court of Appeals raising several claims, including most of those contained in his current petition. The Michigan Court of Appeals affirmed his convictions and sentences. *See People v. Cooper*, No. 301485, 2013 WL 2120274 (Mich. Ct. App. May 16, 2013). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *See People v. Cooper*, 495 Mich. 882, 838 N.W.2d 553 (Oct. 28, 2013).

Petitioner thereafter filed his federal habeas petition. He raises the following claims:

I.     The state court's decision that petitioner is not entitled to a new trial where the conviction for murder is against the great weight of the evidence presented, is a violation of his Fifth and Fourteenth Amendment due process rights established by the U.S. Constitution and is an unreasonable application

of *Jackson v. Virginia*.

II. Petitioner Cooper's Sixth Amendment right to effective assistance of trial counsel, and Fifth Amendment right to a fair trial under the U.S. Constitution was violated by counsel's actions. Thus, counsel's actions violated petitioner's rights in the following manner by:

a. Defense counsel failed to move for a continuance of petitioner's trial when defense counsel had another trial scheduled, at the same time, in another courtroom, within the same courthouse. As a result, much of the trial was conducted without counsel available to object to improper testimony or questioning, or to offer guidance to petitioner.

b. Defense counsel failed to put forth a defense as guaranteed by the U.S. Constitution where counsel was made aware of several alibi witnesses, yet failed to file the alibi defense as required by Michigan statute, or call these witnesses.

c. Defense counsel failed to move the court to provide adequate jury instructions on the credibility of identification under the poor lighting conditions, or request that the court consider manslaughter or failed to object when the court refused to consider manslaughter as a lesser offense where there were facts in support thereof.

d. Defense counsel failed to request a hearing, file pretrial motions, or otherwise challenge the introduction of irrelevant evidence, including guns not shown to be relevant, the decedent's bloody clothes, and uncharged bad acts contaminated petitioner's trial thus violating his rights to a fair trial under the Fifth Amendment to the U.S. Constitution.

e. Defense counsel failed to request or receive discovery prior to the start of trial. At sentencing, the judge ordered the discovery material be provided to defendant because of counsel's failure to request it. These documents were not available to defendant as ordered.

f. Defense counsel failed to effectively use the power of cross-examination to challenge the witness testimony and bring the inconsistencies to the jury's attention.

g. The cumulative effects of counsel's errors denied petitioner his due process rights to a fair trial guaranteed by the U.S. Constitution. U.S. Const. V, VI, XIV.

III.     Petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel on his only appeal of right when counsel failed to raise numerous trial counsel issues of error in violation of *Strickland v. Washington*.

IV.     Petitioner's rights under the federal and state constitution to be free from unreasonable search and seizure were violated when the police department searched his home without probable cause. If relief is not warranted as plain error, then counsel was constitutionally ineffective for failing to object.[1]

V.     The prosecutor denied petitioner his constitutional right to a fair trial by making multiple arguments that were without evidentiary support and highly prejudicial.

Respondent has filed an answer to the petition contending that it should be denied. The petitioner has filed a reply to that answer.

---

[1]The petitioner lists this same issue as both Claim IV and Claim V in his petition.

## III.    Standard of Review

The following standard applies in federal habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21; *see also Williams*, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the

benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333 n.7).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits." *Harrington*, 131 S. Ct. at 785 (internal quotation marks omitted). Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). While the requirements of "clearly established law" are to

be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

Further, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.    Discussion

### A.    Procedural Default

As an initial matter, respondent contends that several of the petitioner's habeas claims are barred by procedural default. However, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the procedural default issues are complicated, and the substantive issues are easier to resolve. Consequently, the interests of judicial economy are best served by addressing the merits of the claims.

### B.    Merits

#### 1.    Great Weight/Insufficient Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the jury's verdict was

against the great weight of the evidence and the prosecution failed to present sufficient evidence to support his convictions. Respondent contends that this claim lacks merit.

Petitioner is not entitled to habeas relief on his claim that the jury verdict was against the great weight of the evidence. Federal habeas review is not available to correct errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia*, 443 U.S. 307 (1979). Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. *See Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the

14

responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). The "existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id.* at 788-89.

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. *See People v. Kelly*, 231 Mich. App. 627, 642 (1998); MICH. COMP. LAWS § 750.316. Premeditation and deliberation may be established by evidence showing "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170 (1992). The elements of felon in possession of a firearm are (1) the defendant was convicted of a felony, (2) the defendant possessed a firearm, and (3) at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *See People v. Perkins*, 262 Mich. App. 267, 270, 686 N.W.2d 237 (2004); MICH. COMP. LAWS § 750.224f. The elements of felony firearm are that the defendant possessed a firearm during the commission of, or an attempt to commit, a felony offense. *See People v. Akins*, 259 Mich. App. 545, 554; MICH. COMP. LAWS § 750.227b.

The prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *See People v. Kern*, 6 Mich. App. 406, 409 (1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of

the elements of an offense, including the identity of the perpetrator and the defendant's intent or state of mind. *See People v. Nowack*, 462 Mich. 392, 402-03 (2000); *People v. Dumas*, 454 Mich. 390, 398 (1997); *People v. Jolly*, 442 Mich. 458, 466 (1993). The use of a lethal weapon supports an inference of an intent to kill. *See People v. Turner*, 62 Mich. App. 467, 470 (1975).

Applying the *Jackson* standard, the Michigan Court of Appeals denied relief on this claim. The court explained:

> Cooper also argues, in a rambling brief submitted on his own behalf, that there was insufficient evidence to support his convictions. Specifically, he summarizes evidence—particularly the eye witnesses' testimony—that he believes was incredible and concludes that his convictions must be reversed as a result. We will not second guess the jury's resolution of credibility disputes. *Davis*, 241 Mich App at 700. And, when the witness testimony is combined with the other evidence, there was sufficient evidence to support each conviction. As already discussed under his challenge premised on the great weight of the evidence, it was undisputed that someone shot and killed Beard on the day at issue. There was also direct testimony to establish that Cooper was the one who shot and killed Beard and that he did so after returning to his home, retrieving a weapon, and then returning to find Beard some 20 minutes or more after having an altercation with him. In addition, the parties stipulated that Cooper was ineligible to possess a firearm. When viewed in the light most favorable to the prosecution, this evidence was sufficient to permit a rational trier of fact to find each element of the charged offenses had been proved beyond a reasonable doubt. *Roper*, 286 Mich App at 83. Consequently, there was sufficient evidence to support Cooper's convictions.

*Cooper*, 2013 WL 2120274, at *5 (footnote omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application federal law. The evidence presented at trial, viewed in the light most favorable to the prosecution, established that petitioner committed the crimes and acted with the requisite intent. The eyewitness testimony of Chalaunda Latham, Tenia Brim, and Shaunte Johnson,

if believed, established beyond a reasonable doubt that the petitioner had an altercation with Ronald Beard, that the petitioner returned to his home and obtained a rifle, that he confronted Beard who was in his car on the street several minutes later, and that he shot at Beard through the car window, killing him. The parties stipulated that the petitioner was a felon who was ineligible to possess a firearm. This evidence was sufficient to support petitioner's convictions for first-degree murder, felon in possession, and felony firearm.

Petitioner challenges the credibility of the prosecution witnesses and the jury's evaluation of the evidence presented at trial. However, it is for the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. Habeas relief is not warranted on this claim.

### 2. Ineffective Assistance of Trial Counsel Claims

Petitioner next argues that he is entitled to habeas relief because his rial counsel was ineffective for moving for a continuance due to a scheduling conflict, failing to pursue an alibi defense, failing to request jury instructions, failing to object to the introduction of irrelevant evidence, failing to obtain/provide him with discovery prior to sentencing, and failing to properly cross-examine witnesses. Petitioner further argues that he is entitled to habeas relief due to the cumulative effect of trial counsel's alleged errors. Respondent contends that some of these claims are barred by procedural default and that all of the claims lack merit.

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance

of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687.  Second, a petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id*.

To satisfy the performance prong, petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential. *See id*. at 689.  There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See id.* at 690.  Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *See id*.  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted).  "When § 2254(d) applies, the

18

question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner first argues that trial counsel was ineffective for failing to move for a continuance due to a scheduling conflict with another trial. Citing the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> Cooper argues that he was denied the effective assistance of counsel because his lawyer was conducting a trial in another case at the same time. The existing record affords no basis to conclude that his lawyer's performance fell below an objective standard of reasonableness. She was present for all proceedings in this case. And it was only the final day of trial, at which closing arguments were made and jury instructions were given, that she participated in another trial; even so, the trial court in this case started promptly at 9:00 a.m. to accommodate defense counsel, counsel made her closing argument and attended all of the proceedings, and she was then excused for the other trial while the jury deliberated. There is no indication that her performance was affected in any manner by the other trial. Further, the record does not suggest a reasonable probability that the outcome of the proceedings would have been different but for this scheduling conflict. Although the reading of the verdict was delayed for approximately two hours after the jury reached a verdict, the jury was never informed that defense counsel had another trial or that this was the cause for the delay in reading the verdict. Accordingly, because Cooper has not established either deficient performance or prejudice, his ineffective assistance of counsel claim fails. *Uphaus*, 278 Mich App at 185.

*Cooper*, 2013 WL 2120274, at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. Petitioner fails to present any facts to demonstrate that trial counsel operated under a conflict of interest, that counsel was absent for any part of his trial, that counsel's schedule affected her performance at his trial, or that he was prejudiced by the fact that counsel had another trial near the time of his trial. Habeas relief is not warranted on this claim.

Petitioner next aruges that trial counsel was ineffective for failing to file an alibi notice, investigate witnesses, and pursue an alibi defense. The Michigan Court of Appeals denied relief on this claim, explaining:

> Cooper next contends that he was denied effective assistance by his lawyer's failure to conduct a pretrial investigation or call certain character or alibi witnesses. In support of his contention, Cooper cites the preliminary examination transcript where his lawyer read a list of names of potential witnesses that he wanted sequestered. He argues that these witnesses were character or alibi witnesses that his lawyer failed to investigate and, if he had investigated them and called them at trial, the witnesses' testimony would have proved his good character and that he was not at the scene. However, reviewing this claim on the record alone, there is no indication that Cooper's lawyer failed to investigate these witnesses or that any of the witnesses would have testified favorably to Cooper. We must presume that his lawyer acted within the range of reasonable professional assistance and, in doing so, we must "affirmatively entertain the range of possible reasons for the act or omission" to determine whether there "might have been a legitimate strategic reason for the act or omission." *Gioglio*, 296 Mich App at 22–23. Given the lack of evidence that Cooper's lawyer failed to investigate these witnesses or that they would have been able to testify to Cooper's benefit, we must presume that she did investigate these witnesses and determined that their testimony was unhelpful. *Id*. Cooper has not overcome the presumption that his lawyer provided effective assistance.

*Cooper*, 2013 WL 2120274, at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. Defense counsel must conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *See Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. Nonetheless, decisions as to what

evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In the present case, petitioner states that he gave trial counsel contact information for unidentified friends who could be potential alibi witnesses, but he does not allege any facts to show that trial counsel, in fact, failed to investigate relevant witnesses, particularly those who may have been able to provide an alibi or other favorable defense testimony. In fact, petitioner admits that he has been unable to ascertain the extent of trial counsel's investigation into such matters. *See* Pet.'s Br. at 32. Petitioner's assertions about counsel's investigation, or lack thereof, are thus purely speculative. Moreover, counsel may have reasonably decided not to call petitioner's friends as alibi witnesses due to concerns about their credibility. *See, e.g., Stadler v. Berghuis*, 483 F. App'x 173, 176-77 (6th Cir. 2012). Counsel may have also believed that contesting the prosecution's case and casting doubt on the credibility of prosecution witnesses would be more effective in creating reasonable doubt than presenting an alibi defense which could be subjected to significant challenge. *See, e.g.*, *Hale v. Davis*, 512 F. App'x 516, 522 (6th Cir. 2013. Such a strategy was particularly reasonable here where three eyewitnesses who knew the petitioner positively identified him as the perpetrator of the crime. *See Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013). The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (noting that an ineffective assistance claim

"cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Petitioner also fails to show that he was prejudiced by counsel's conduct. He fails to show what more trial counsel would have discovered upon further investigation which would have benefitted the defense or affected the outcome at trial. For example, he fails to provide affidavits from any witnesses who were not called to testify at trial setting forth their proposed testimony. As discussed above, conclusory allegations without evidentiary support are insufficient to justify habeas relief. Habeas relief is not warranted on this claim.

Petitioner next asserts that trial counsel was ineffective for failing to request jury instructions on the credibility of identifications and the use of inconsistent statements to impeach a witness. The Michigan Court of Appeals denied relief on this claim, explaining:

> we shall address Cooper's argument that the trial court erred in failing to instruct the jury on the reliability of identification testimony. This issue is waived because defense counsel expressed satisfaction with the jury instructions by stating that she had no objections. People v. Kowalski, 489 Mich 488, 504–505; 803 NW2d 200 (2011). In any event, the record reflects that the trial court instructed the jury at length regarding the consideration of identification testimony. Cooper's argument is therefore unavailing and his ineffective assistance of counsel argument on this matter also fails given that he has not established the factual predicate for his claim. *People v. Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

*Cooper*, 2013 WL 2120274, at *9.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. Petitioner's claim is belied by the record. The record indicates that the trial court properly instructed the jury on the consideration of identification testimony, inconsistent statements, and the evaluation of witness testimony. *See* 10/4/10 Trial Tr.

at 47-50, 56-57. Because the trial court provided adequate instructions on such matters, petitioner cannot establish that trial counsel erred or that he was prejudiced by counsel's conduct in this regard. Counsel cannot be deemed ineffective for failing to make a futile or meritless objection. Habeas relief is not warranted on this claim.

Petitioner next asserts that trial counsel was ineffective for failing to object to the admission of irrelevant evidence, including guns and the victim's bloody clothes. The Michigan Court of Appeals denied relief on this claim, explaining:

> Cooper contends that his lawyer was ineffective for failing to object to the admission of guns recovered from his home and Beard's bloody clothes on the ground that this evidence "prove[d] nothing[.]" Relevant evidence is generally admissible. MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Here, the challenged evidence was relevant. The fact that Cooper had several long guns in his home tends to make it more likely than not that he had access to a long gun like the one he was seen carrying on the day at issue. The admission of Beard's clothing was also relevant; it helped to explain why there was no evidence from his autopsy that he was shot at close range. Because the evidence was relevant, Cooper's lawyer cannot be faulted for failing to object. *People v. Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

*Cooper*, 2013 WL 2120274 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. The Michigan Court of Appeals' determination that the evidence was properly admitted under the Michigan Rules of Evidence is binding on this court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Given that the evidence was properly admitted under Michigan law, petitioner cannot establish that trial counsel erred and/or that he was prejudiced by

counsel's conduct.  Habeas relief is not warranted on this claim.

Petitioner also asserts that trial counsel was ineffective for failing to obtain discovery and provide it to him prior to sentencing.  The Michigan Court of Appeals denied relief on this claim, explaining:

> Cooper also argues that his lawyer was ineffective for failing to provide him with a complete discovery package; however, he failed to cite any authority for the proposition that his lawyer had a duty to do so, failed to meaningfully discuss the evidence concerning the discovery that his lawyer had, but refused to provide, and failed to meaningfully discuss how the failure to provide the discovery prejudiced his trial. Therefore, he has abandoned this claim of error on appeal. *People v. Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006).

*Cooper*, 2013 WL 2120274, at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law.  This claim is purely conclusory.  The record indicates that trial counsel agreed to provide the petitioner's family with the discovery materials at the time of sentencing.  *See* 10/20/10 Sent. Tr. at 3-5.  Petitioner fails to allege with any specificity what discovery materials trial counsel failed to obtain, how any such materials would have benefitted the defense, or how counsel's alleged failure to turn over those materials to him affected his trial, his appeals, or even habeas review.  As noted, conclusory allegations do not provide a basis for federal habeas relief.  Habeas relief is not warranted on this claim.

Petitioner next asserts that trial counsel was ineffective for failing to properly cross-examine the eyewitnesses.  The Michigan Court of Appeals did not specifically discuss this issue, but may have found it to be abandoned due to the petitioner's failure to meaningfully address it on appeal.  *Cooper*, 2013 WL 2120274, at *5, n.2.  The state court's denial of relief is neither contrary

to Supreme Court precedent nor an unreasonable application of federal law. The record indicates that trial counsel cross-examined those witnesses, challenged their credibility, and pointed out the variations and inconsistencies in their testimony. *See, e.g.,* 9/29/10 Trial Tr. at 216-36, 290-97; 9/30/10 Trial Tr. at 14-16, 55-64. Counsel's conduct was reasonable and petitioner fails to show that it fell outside the wide range of acceptable representation. The petitioner also fails to show that he was prejudiced by counsel's conduct. Habeas relief is not warranted on this claim.

Finally, petitioner asserts that he is entitled to habeas relief due to the cumulative effect of trial counsel's alleged errors. Such a cumulative error claim is not cognizable on habeas review. *See Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012). Petitioner thus fails to state a claim upon which relief may be granted as to this issue. Moreover, given that none of his ineffective assistance of trial counsel claims has merit, petitioner cannot establish that he is entitled to relief based upon such cumulative error. Habeas relief is not warranted on these claims.

### 3.      Ineffective Assistance of Appellate Counsel Claim

Petitioner next asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise various claims on direct appeal and to subject his case to meaningful adversarial testing. Respondent contends that this claim lacks merit.

As discussed above, in order to establish ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. A criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Further, "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of

vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard." *Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Petitioner fails to show that appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial claims on direct appeal, including a great weight of the evidence claim and a jury instruction claim. None of the other claims subsequently raised by the petitioner on his own should have been raised by counsel, as evidenced by the Michigan Court of Appeals' decision denying relief on those claims. Nor has petitioner shown that appellate counsel failed to subject his case to meaningful adversarial testing. Habeas relief is not warranted on this claim.

### 4. Illegal Search/Ineffective Assistance of Counsel Claims

Petitioner next argues that he is entitled to habeas relief because the search of his house violated his Fourth Amendment rights. He alleges that the police did not have probable cause to support the issuance of the warrant and therefore the firearms seized from the house should have been suppressed. Petitioner also asserts that trial counsel was ineffective for failing to seek suppression of the seized evidence. Respondent contends that the Fourth Amendment claim is

barred by procedural default, not cognizable upon habeas review, and lacks merit, and that the ineffective assistance claim lacks merit.

Federal courts will not address a Fourth Amendment claim on habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976). A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed before trial. *See People v. Ferguson*, 376 Mich. 90, 93-94 (1965). Consequently, petitioner is entitled to relief on this claim only if he establishes that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

The petitioner has not make the required showing. The record reveals that petitioner raised the Fourth Amendment issue on direct appeal before the Michigan Court of Appeals and was denied relief. *See Cooper,* 2013 WL 2120274, at *5-6. The Michigan Supreme Court then denied leave to appeal. Consequently, it is clear that the Michigan courts were cognizant of petitioner's Fourth Amendment claim and that he received all of the process he was due. The petitioner's Fourth

Amendment claim is therefore not cognizable on habeas review pursuant. Further, given that the Michigan Court of Appeals denied relief on the merits of the Fourth Amendment claim, petitioner cannot establish that trial counsel erred or that he was prejudiced by counsel's conduct in not challenging the search of his house or seeking suppression of the seized gun evidence. Habeas relief is not warranted on this claim.

### 5. Prosecutorial Misconduct Claims

Finally, petitioner asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by commenting on prior bad acts and making statements unsupported by the evidence during closing arguments. Respondent contends that these claims are barred by procedural default and lack merit.

Prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must show that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The Michigan Court of Appeals denied relief on these claims, explaining:

Next, Cooper argues that the prosecutor committed misconduct by improperly referring to Cooper's prior bad acts. Because Cooper's trial lawyer did not object to the prosecutor's remarks, we shall review this claim for plain error. *People v. Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). This Court reviews a claim of prosecutorial misconduct de novo to determine whether the defendant was denied a fair and impartial trial. *Id*.

Cooper asserts that the prosecutor improperly referred to prior bad acts, but he does not cite any particular remark or otherwise discuss the allegedly improperly comments. Therefore, he has abandoned this claim of error. *Martin*, 271 Mich App at 315. In any event, our

review of the record has revealed no indication that the prosecutor improperly referred to any prior bad acts.

He also argues that the prosecutor committed misconduct during closing argument by referring to a fact that was not in evidence; namely, that Cooper was in his house watching Latham talk to Beard. "A prosecutor may not make a statement of fact to the jury that is unsupported by evidence, but she is free to argue the evidence and any reasonable inferences that may arise from the evidence." *People v. Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). Here, Cooper faults the prosecutor for stating that Cooper was likely at home watching Latham and Beard:

> Now, notice that the lights are off when the ladies arrive. Well, it's easier to see what's going on outside your house when the lights are off. And you know he's sitting there watching [Latham] talking to Ronald Beard again. And imagine how disrespected he's feeling now because [Latham] is on his street, at his house, talking to her other boyfriend again.

The prosecutor's statement was supported by a reasonable inference from the evidence. Testimony established that Cooper had been seen running toward his house following the earlier confrontation and that the house was dark when the women arrived outside. The testimony also established that he had earlier stated that he felt disrespected by Beard's actions toward Latham and that it was shortly after Latham stopped to talk with Beard that Cooper came running from his house with a long gun that he did not have in the earlier confrontation. The prosecutor could reasonably argue that this evidence supported the conclusion that Cooper was in the house and watching Latham and Beard. *Ackerman*, 257 Mich App at 450.

*Cooper*, 2013 WL 2120274, at *7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. First, the court's review of the record, including closing arguments, does not support petitioner's assertion that the prosecutor improperly commented on prior bad acts or attempted to convince the jury to convict him based upon his character rather than the evidence presented at trial. Second, the prosecutor's comment that petitioner was in his house

watching Latham talk to Beard was a rational inference from the trial testimony. While prosecutors may not misstate the evidence, *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001), or argue facts not in evidence, *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004), they have "'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).

Moreover, even if the prosecutor erred, petitioner was not denied a fair trial. The trial court properly instructed the jury about the elements of the offenses, the presumption of innocence, the burden of proof, and the proper consideration of the evidence. The court also explained that the attorneys' arguments are not evidence and that if a party said something contrary to the court's instructions the jury must follow the instructions. *See* 10/4/10 Trial Tr. at 39-58. Petitioner fails to show that the prosecutor's arguments were improper or that they rendered his trial fundamentally unfair. Habeas relief is not warranted on these claims.

## V.     Conclusion

For the reasons stated above, the court concludes that petitioner is not entitled to federal habeas relief on his claims. Accordingly,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue, as petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

IT IS FURTHER ORDERED that petitioner may not proceed on appeal *in forma pauperis* because any appeal in this matter would be frivolous.


                                            S/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: May 30, 2017
       Detroit, Michigan